RIDLEY *et al.*, survivors, *v.* HIGHTOWER.

1. One who wrote his name upon the back of a promissory note merely for the purpose of guarantying its payment, but whose indorsement, because of his not being a party to the paper, was neither essential nor proper to a due transmission of the title thereto, was a surety only, and not liable on the paper as an indorser.

2. The liability of such a surety, though upon a promissory note which is as to the principal a sealed instrument, is barred after the lapse of six years from

the time the right to sue accrued, unless the surety also contracted under seal; and he did not so contract if there was no seal nor anything intended as a representation thereof after his signature.

Argued December 7,—Decided December 20, 1900.

Attachment.    Before Judge Smith.    Pulaski superior court. February term, 1900.

*Smith, Hammond & Smith, Pearsall & Shipp,* and *W. L. Grice & Sons,* for plaintiffs.
*Dessau, Harris & Birch* and *J. H. Martin,* for defendant.

FISH, J.    This case is absolutely controlled against the plaintiffs in error by the rulings announced in the headnotes. We shall accordingly limit this opinion to a statement of such only of the facts as may be necessary to show how the questions upon which those rulings are made arose, and to a brief discussion of the law applicable. From the allegations of a petition filed by the plaintiffs below against J. W. Hightower, the following appeared: In 1890 the Empire Lumber Company, a Tennessee corporation, made and delivered to the late firm of M. C. & J. F. Kiser & Co., of which the plaintiffs are the surviving partners, a number of promissory notes. One of them will suffice as a specimen. It was in the following words and figures.

$521.00                                Atlanta, Ga. March 5th, 1890.

On September 5/90, after date, we the subscriber of ............ County, State of Tenn., promise to pay M. C. & J. F. Kiser & Co., or order, at the First National Bank of Chattanooga, Tenn., with exchange on Atlanta, Ga., the sum of five hundred and twenty-one & 00/100 dollars, for value received, with interest at 8 per cent. per annum, after maturity, and with cost of collection, including ten per cent. attorney's fees, and exchange; and we hereby waive and renounce any and all right of exemption or homestead, or any benefit whatever under the homestead, exemption, or garnishment laws. Given under our hand and seal.    The Empire Lumber Co. (Seal)
                                       J . C. Anderson, President. (Seal)

On the back of this note were the following indorsements: "I hereby waive protest on this note,—R. A. Anderson." "Protest waived,—J. C. Anderson." "Protest waived,—J. W. Hightower."

Hightower, for a sufficient consideration, placed his name on the

back of the note after it had been executed and delivered to the payees, and did so for the purpose of guarantying and becoming personally responsible for its payment. The above is true of the other notes mentioned. The plaintiffs prayed for a judgment against Hightower for the full amount of all the notes. · It appeared that the action was brought after more than six years from their maturity and from the date when his name was written thereon. The defendant, by demurrer, presented a number of objections to the petition, one of which was that on the face thereof the plaintiffs' action was barred by the statute of limitations. In this connection the demurrer in effect set up that even if the original notes are, so far as the maker and the payees are concerned, enforceable in the courts of this State as Georgia contracts under seal, the undertaking of Hightower was not under seal, and therefore all right of action against him was barred after the lapse of more than six years from the maturity of the notes and from the day when he assumed liability thereon. The demurrer also made the point that these notes were Tennessee contracts, and that under the law of that State the original notes were, even as between maker and payee, mere simple contracts. The demurrer was sustained, and the question is: was the plaintiffs' right of action against Hightower barred? Pursuing the course marked out above, we shall not stop now to consider whether or not these notes were Tennessee contracts, nor, upon the assumption that they were, to inquire what are the laws of that State with respect to the classification of such instruments relatively to statutes of limitations. We deem it unnecessary to thus broaden our field of discussion; for we shall deal with the case as if the notes were Georgia contracts unaffected by any law of force in Tennessee, and this is conceding to counsel for the plaintiffs in error the utmost for which they contended on this line.

1. The first proposition we lay down is, that the liability of Hightower was that of a mere surety, and that he was not in any strictly legal sense an indorser. This is settled by the decision of this court in the well-considered case of *Sibley* v. *Bank*, 97 *Ga.* 126. See 4th headnote (page 127), and the opinion of Mr. Justice Atkinson and authorities cited, page 141 et seq.

2. Thus viewing the case, the right of action against Hightower was barred. Section 3765 of the Civil Code, embracing the law of force when Hightower made the contract on which he is sought to

be held liable, declares when an "instrument shall be considered under seal." The language of that section has been construed in the cases of *Chambers* v. *Kingsberry*, 68 *Ga.* 828, *Brooks* v. *Kiser*, 69 *Ga.* 762, *Willhelms* v. *Partoine*, 72 *Ga.* 898, and *Humphries* v. *Nix*, 77 *Ga.* 98. These cases, taken all together, establish the rule that, to constitute a sealed instrument, it must contain a recital to the effect that it is given under seal, and the signature of the maker must have attached thereto a seal, or a scroll or some other device intended to represent a seal. In *Latham* v. *Kolb*, 76 *Ga.* 291, this rule was applied to a contract of suretyship upon a promissory note, evidenced by the surety's signing his name upon the face of the instrument without attaching to his signature a seal or other device to represent a seal. The action was against Kolb as principal, and Camp as surety, upon two promissory notes which, in the language of Chief Justice Jackson, were "signed but not sealed by Camp as security." An examination of the original record of that case discloses, though the official report does not, that each of the notes embraced the words: "Witness our hands and seal." The court held squarely that, as to Camp, "who did not put his seal to the notes," the action was barred; and this it could have done only by applying the limitation of six years, for the notes were due October 15, 1875, and the action was brought March 31, 1884. That decision is absolutely controlling upon the case in hand. Counsel for the plaintiffs relied on the case of *Milledge* v. *Gardner*, 29 *Ga.* 700, in which it was held: "Under our statutes, the endorsement of a sealed instrument, although the signature of the endorser has no seal or scroll attached to it, is itself a contract under seal, and the statutory bar applicable to it is twenty years." If there were an irreconcilable conflict between the decisions in these two cases, the older would prevail; but there is no such conflict. In the *Milledge* case, the court based its ruling upon the act of 1838, relating to sealed instruments. See Cobb's Dig. 274. In this connection Judge Stephens said (page 704): "Now this endorsement has no seal nor scroll attached to it, but the instrument to which it serves as a signature as security is a sealed instrument. The intention expressed in the body of it, that it shall be a sealed instrument, makes it one under our act of 1838, without any seal or any scroll attached to any one of the signatures to it. Whoever signed it, whether as principal or as security or as endorser, and

whether with or without a seal or scroll attached to his signature, signed a paper which by its own terms was a sealed instrument under the statute. The endorsement, expressing no contract in itself, accedes to the contract which *is* expressed in the paper, and *that* is a specialty contract. It does this, if it does anything. The endorsement then created a specialty contract, and the statutory bar applicable to it is twenty years instead of six years." We think the law was changed by the act of March 6, 1856 (Acts of 1855–6, p. 234), now embraced in section 3765 of the Civil Code, to which we have referred above. But, aside from this, the indorsement dealt with in the *Milledge* case was made by the payee, and therefore he was really liable as a technical indorser. In this respect the cases are essentially different. Much, it must be admitted, could be said in support of the proposition that, for the purposes of our present question, the difference as to the form of the indorser's liability is not material; and much could be said to the contrary. We do not care to discuss this feature of the controversy. We are bound to presume this court did not decide the case reported in 76 *Ga.* in ignorance of the decision reported in 29 *Ga.* Most probably, it thought the change in the law to which we have referred had rendered that decision inapplicable. It could well have taken this view, or have held that the contracts, respectively, were of a different nature. At any rate, the two decisions are in our books and both are binding on us as authority, unless the later was so palpably in conflict with the earlier as not to be authoritative. We do not think this is so, and therefore agree with the judge below in holding that the plaintiff's cause of action against Hightower was barred.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., who was disqualified.*