19658. LANIER *et al.*, administrators, *v.* BERRY.

DECIDED JANUARY 25, 1930.   REHEARING DENIED FEBRUARY 12, 1930.

*Maddox, Matthews & Owens,* for plaintiffs.

*Wright, Wright & Covington,* for defendant.

JENKINS, P. J.   (After stating the foregoing facts.)   By the act of 1838 it was provided that "whenever it shall be shown by words expressed in the body or conclusion of said written contract or other instrument in writing, that it was the intention of the party or parties subscribing the same, to become bound by, or to execute a writing, obligatory, or sealed instrument, though no scroll or seal has been annexed to said written contract or other instrument," it should be considered an instrument under seal. It was further provided by that act that any such instrument having "a scroll or other representation of a seal annexed thereto instead

of a seal composed of a wafer or wax, or other tenacious substance" should likewise "have all the force, effect, and dignity of writings obligatory or instruments under seal." It will thus be seen that by the act of 1838 an instrument became a sealed instrument either when it was referred to as such by the terms of the instrument, or when, without any such words, a seal or representation of a seal was actually annexed to the signature. By the act of 1856, now substantially embodied in the code as section 4359, it was and is provided that "all suits brought upon bonds or other instruments, under seal, shall be brought within twenty years after the right of action accrues and not after, but no instrument shall be considered sealed unless so recited in the body of the instrument." In *Latham* v. *Kolb,* 76 *Ga.* 291, it was held by the Supreme Court that under the act of 1856 a promissory note does not become a sealed instrument merely because it styles itself as such, but that in addition thereto there must be actually appended to the signature a seal or scroll or some representation of a seal. It will thus be seen that under the present law, in order for a note to be a sealed instrument, it must not only be designated as such by the terms of the instrument itself, but there must also be annexed to the signature some representation of a seal. See also *National Surety Co.* v. *Farmers State Bank,* 145 *Ga.* 461, 471 (89 S. E. 581). During the time that the act of 1838 was of force, it was held by the Supreme Court, in *Milledge* v. *Gardner,* 29 *Ga.* 700, that where a sealed note was payable to a named person, and such person, who in that case was a technical indorser, entered his name upon the back of the instrument for the purpose of transferring title thereto, his indorsement was to be taken and considered as an indorsement under seal, irrespective of any such designation on the part of the indorser at the time of the indorsement, and irrespective of any scroll or representation of a seal being annexed to his signature. The ruling in the *Milledge* case was based partly on the broad ground, following the statute of 1838, that "The intention expressed in the body of it, that it shall be a sealed instrument, makes it one under our act of 1838, without any seal or any scroll attached to any one of the signatures to it. Whoever signed it, whether as principal or as security or as endorser, and whether with or without a seal or scroll attached to his signature, signed a paper which by its own terms was a sealed instrument under the

statute." In the *Milledge* case the court, speaking through Judge Stephens, seemed also, as an additional basis for its ruling, to suggest the idea that "the endorsement, expressing no contract in itself, accedes to the contract which is expressed in the paper," and that, consequently, the indorser, irrespective of the plain provision of the statute itself, could not be heard to dispute the nature and character of the paper payable to, and owned and necessarily transferred by himself.

After the change in the statute, and after the act of 1856 came into effect, it was held by the Supreme Court in *Ridley* v. *Hightower,* 112 *Ga.* 476 (37 S. E. 733), that "one who wrote his name upon the back of a promissory note merely for the purpose of guaranteeing its payment, but whose indorsement, because of his not being a party to the paper, was neither essential nor proper to a due transmission of the title thereto, was a surety only, and not liable on the paper as indorser," and that the liability of such surety was barred after six years from the time the right to sue accrued, "unless the surety also contracted under seal; and he did not so contract if there was no seal nor anything intended as a representation thereof after his signature." That decision distinguishes its ruling from that in the *Milledge* case on the basis that the undertaking in the *Milledge* case was that of a technical indorser, whereas the undertaking in the *Ridley* case was merely that of a surety, to whom the note was not made payable, and whose signature was neither essential nor proper to the due transmission of the title to the instrument. Later, in *Baldwin Ferlilizer Co.* v. *Carmichael,* 116 *Ga.* 762, supra, the Supreme Court, in a case where the liability was that of a technical indorser, as in the *Milledge* case, followed the ruling in that case, distinguishing the ruling in the *Ridley* case, and planted its decision strictly upon the ground that the liability in the *Carmichael* case was that of a strict, technical indorser, and that the decision in the *Milledge* case was left unimpaired so far as regarded a case to which it was directly and strictly applicable.

Counsel for plaintiff in error undertake to bring the instant case within the purview of the *Milledge* case on the theory that if a technical indorser, in signing his name without a seal for the purpose of transferring title of an instrument payable to himself, must be compelled to acknowledge and accede to the nature and

character of the instrument payable to him, and thus assigned by him, so much the more would such a rule obtain in the case of a joint and several obligor in the original undertaking. We are unable to agree with the reasoning which able counsel thus present, and can see no more reason for a joint and several obligor to be bound by the nature and character of the undertaking of another signer than would a surety. We know of no reason why one of many joint and several principal obligors could not limit his liability to six years, while another, by the terms of his undertaking, might extend his own liability for twenty years. The rule of the *Carmichael* case appears to be plainly and strictly limited to the case of a technical indorser, to whom the note itself is made payable, and whose indorsement is necessary for the transmission of title. It can easily be seen that an indorser ought not to be allowed to claim the benefit of an obligation payable to himself, and by transferring such an instrument to another be relieved of a portion of his liability which the necessary indorsement entails. In the instant case we conceive the law to be governed by the plain provision of the present statute, which clearly demonstrates that the signature of the present defendant is one which is not under seal, and, the ruling and reasoning in the *Milledge* case not being available on behalf of the plaintiff as against one other than a technical indorser, we think the terms of the statute itself must govern, and that the judge of the superior court was right in holding that the suit was barred as against the defendant in error.

*Judgment affirmed. Stephens and Bell, JJ., concur.*